16138

McCOLLUM v. BANKS *ET AL.*
(50 S. E. (2d) 199)

*Messrs. W. E. Findley and W. G. Acker,* of Pickens, *for Appellant,*

*Messrs. Julien D. Wyatt* and *Felix L. Finley, Jr.,* of Pickens, *for Respondents, Emma R. Fortner and Josie*

*Evans,*

November 3, 1948.

STUKES, Justice.

Melious A. Banks of Pickens County died there in December, 1946, at the age of about seventy-seven years. His closest surviving relatives are a brother and sister and their children. One of the latter, who is Virgie McCollum and the niece of the decedent, offered for probate his purported last will which was dated and executed on May 6, 1946, Mrs. McCollum was the sole beneficiary of the estate which is valued at about $2,000.00, and was designated in the will as executrix. The testator lived with and was cared for by her during the last several years of his life. After probate in common form it was attacked by another niece, Mrs. Josie Evans, who was the beneficiary under a former will, the date and content of which are not in the record.

Previously, in January, 1945, Mrs. McCollum filed a verified petition in the Probate Court in which she alleged that Mr. Banks was of advanced age, extremely deaf, of poor memory, and therefore in need of care with respect to his financial affairs. He had been overreached in several transactions and was recently persuaded to convey his real estate without consideration to a child about one year old. Beside that property he had about $300.00 in money and re-

ceived a monthly pension of $75.00 as a Spanish American War veteran. The prayer of the petition was for the appointment of a Committee who should perform the usual duties and also bring action for cancellation of the recited deed.

Upon service of the petition and proper notice, Mr. Banks applied for the appointment of a guardian *ad litem,* which was done and the latter filed an answer and personally appeared in behalf of Mr. Banks at the hearing. There was testimony by Mrs. McCollum, who is beneficiary and proponent of the subsequent purported will, in substantiation of the allegations of the petition and that Mr. Banks needed a guardian to handle his business affairs because he was almost totally deaf and of poor memory. She had explained the situation to him and he was agreeable to the appointment of a Committee. A nephew of Mr. Banks testified that the latter's health was bad and he was practically deaf. This witness had also consulted Mr. Banks with reference to the appointment of a Committee, to which the latter was agreeable. Finally, Mr. Banks himself testified that he had executed the questioned deed to the infant grantee, but did not exactly understand what he was doing; it had been sought before and was "pulled over" that time. No consideration was paid and the witness was willing that a Committee be appointed to handle his business and seek recovery of the real estate which he had conveyed. There was introduced into the record a sworn certificate of Dr. J. H. Cutchin that he had examined Mr. Banks on January 6, 1945, and found him suffering from chronic arteriosclerosis and in the examiner's opinion unable to handle his business transactions because of his physical and mental condition. No other medical evidence was adduced despite the requirement of Sec. 6234 of the Code of 1942 that at least two physicians shall testify in such cases.

. Upon the foregoing proceedings the Probate Court found that Mr. Bank's extreme deafness and age rendered it dif-

ficult for him to handle business matters and that the appointment of a Committee was advisable, particularly in view of his statement that he had been persuaded to convey his real estate without consideration and was agreeable to the appointment of the designated Committee, whereupon appointment was made of a Committee of the person and estate of Mr. Banks as one of unsound mind. Code Sec. 6235. The Committee qualified on Jan. 25, 1945, and continued in the discharge of his duties until Mr. Bank's death. During that time Mrs. McCollum was paid $35.00 per month as board and care for Mr. Banks and his other personal expenses were met by the Committee from the monthly receipt of the pensions checks.

Soon after his appointment the Committee commenced an action in the Court of Common Pleas for the cancellation of the deed of Mr. Banks of December 22, 1944, to the infant grantee, which has been mentioned. It was alleged that the father of the grantee approached Mr. Banks and proposed that he would furnish care and attention in exchange for the deed. Mr. Banks was deaf, in poor health and had little capacity for business and did not comprehend the effect of the deed which was procured upon false representation and advantage taken of the weakened physical and mental condition of the grantor. The evidence in this action contained a signed statement by the father of the infant grantee admitting that there was no consideration and consenting to judgment that the deed be cancelled. The Committee testified that it was apparent that Mr. Banks was subject to overreaching and was incompetent to handle business transactions and Mr. Banks had told him that he did not understand the purport of the deed and was drinking at the time of the execution of it. Counsel for the Committee testified to the same effect and as to an interview with the father of the infant grantee which resulted in the written statement of the latter, to which reference has been made. There was testimony to the same effect by the guardian *ad*

*litem* of the infant defendant. The Referee who took this testimony found the facts to be as represented and that Mr. Banks was deaf to the extent that it was difficult to talk with him and he was subject to lapses of memory, whereby he was overreached in the making of the deed. Decree of the court followed and confirmed the factual findings of the Referee and adopted the recommendation that the deed be cancelled. It was so adjudged and decreed.

Reverting to the proceeding in hand, which originated in the Probate Court: For the proponent there the witnesses to the will testified. Two of them were merely called in for the purpose of serving as witnesses. They did not formerly know Mr. Banks and did not take occasion to observe and judge his mental condition and capacity. Their testimony and that of the third witness to the will established its due execution and attestation in accord with the statute. Code Sec. 8916. The third witness was Mr. W. E. Findley, whose long and honorable career as an attorney at the Pickens Bar is well known. It was he who was appointed Committee for Mr. Banks in January, 1945, and afterward brought the action to cancel the latter's deed. He testified at length and was subjected to long cross examination. He had known Mr. Banks in childhood but afterward lost sight of him until shortly before the proceedings in the Probate Court for the appointment of a Committee. Thereafter Mr. Banks came to his office every month, except when he was sick, to receive his pension check and they talked intimately and extensively. In one of these conversations Mr. Banks said that Mrs. McCollum, who was caring for him, wanted more money for her services and should have more. He suggested that he would like to make a will, giving all of his property to Mrs. McCollum. Mr. Findley approved, and two or three weeks after the first discussion he prepared the will as directed and it was afterward read to Mr. Banks who appeared to fully understand the contents and gave no evidence of acting under any duress or undue influence. He talked

sensibly and seemed to know what he was doing. In the opinion of the witness there was ample testamentary capacity.

Two disinterested neighbors of Mr. Banks testified for proponent that they saw him frequently and, in effect, that he was mentally competent to make a will; and the proponent testified similarly in behalf of the validity of the will. It is better that further comment upon the evidence be omitted in view of the necessity for a new trial.

At the conclusion of the evidence for the proponent of the will the contestant introduced in evidence the record of the former proceedings in the Probate Court for the appointment of the Committee and the record·in the Court of Common Pleas in the latter's action for the cancellation of the deed. No other evidence was offered. Thereupon, as the transcript of the record for appeal puts it, "the Probate Judge by order dated May 13, 1947, refused to admit the paper to probate in solemn form."

Upon this finding of "no will" by the Probate Court the proponent appealed to the Court of Common Pleas and the case was docketed for trial *de novo*. Upon call of it at the September, 1947, term it was agreed by counsel that it be submitted for determination by the Presiding Judge, without a jury, upon the record of the pleadings, testimony and exhibits offered upon the trial in the Probate Court. It is for this reason that the proceedings there have been rather fully stated here. The case was taken under advisement by the Judge who received briefs and thereafter rendered his order and judgment rejecting the will for lack of testamentary capacity, from which appeal comes to this Court.

Appellant took several exceptions which fairly raise the points upon which the appeal turns. Respondent relies upon the proposition that the case is one at law and the factual conclusion of the lower court (here by the trial judge instead of the usual jury) will not be dis-

turbed by this Court unless it is entirely unsupported by the evidence. *In re* Solomons' Estate, 74 S. C. 189, 54 S. E. 207; *In re* Perry's Will, 106 S. C. 80, 90 S. E. 401; *Ex parte* McLeod, 140 S. C. 1, 138 S. E. 355; *Hughes v. Duncan*, 175 S. C. 367, 179 S. E. 326. The position is unquestionable under these and other authorities. And there was support in the prior court proceedings for the finding of testamentary incapacity, but the trial judge erred in apparent acceptance of them as conclusive. The following from the opinion in *Frederick v. Stewart et al.*, 172 S. C. 188, 173 S. E. 623, 625, is relevant:

"One who relies on insanity, proven at another time, to invalidate a will, has the burden of proving by the preponderance of the evidence that at the moment of executing the will the testatrix did not have the mental capacity to do so; and even if a testator has been previously adjudged *non compos mentis*, yet, that would not be conclusive that he was insane at the time of the execution of the will, unless the character of his insanity was of a permanent or chronic nature, which latter fact must be established by the contestants by the preponderance of the evidence."

Collated in the annotation in 27 L. R. A., N. S., beginning at page 54, under the subtitle, Guardianship, are numerous decisions of other jurisdictions wherein wills were upheld which were made, as here, after the makers had been adjudged incompetent to take care of their property.

Moreover, careful consideration of the judgment is convincing that the court did not give due weight to the well established general rule that ordinarily one need not have full mental contractual capacity in order to make a valid will; the criteria are different. *Kirkwood v. Gordon*, 7 Rich. 474, 62 Am. Dec. 418; *Gable v. Rauch*, 50 S. C. 95, 27 S. E. 555; *Matheson v. Matheson*, 125 S. C. 165, 118 S. E. 312. It is said in the note in 27 L. R. A., N. S., at page 54, with digests of many sustaining authori-

ties, as follows: "The rule generally adopted is that a lower degree of capacity than is necessary for the execution of a deed or contract will suffice for the making of a will." The requisites of testamentary capacity have been so many times laid down in our decisions that they need not be repeated. The cases are collected in 34 S. E. Dig., part 1, Wills, 21-55.

The errors found are of substantially the same effect as if the usual course had been followed and the issues submitted to a jury and erroneous instructions given it in these respects. The facts must be found in contemplation of the pertinent rules which have been cited and this court is without jurisdiction to determine them. For that reason the case will be remanded for new trial.

Reversed and remanded.

BAKER, C.J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.