**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

David A. Miller, Respondent,

v.

Sharon S. McMillan (f.k.a. Sharon S. Miller), Appellant.

Appellate Case No. 2021-000110

―――――――――――

Appeal from Spartanburg County
Timothy E. Madden, Family Court Judge

―――――――――――

Unpublished Opinion No. 2024-UP-010
Submitted December 1, 2023 – Filed January 3, 2024

―――――――――――

**AFFIRMED**

―――――――――――

Brian W. King, of King Law Offices, of Forest City, North Carolina, Caleb Timothy Davis, of King Law Offices, of Greer, and Gabriella Faith Morillo, of King Law Offices, of Greenville, for Appellant.

David Alan Wilson, of Wilson & Englebardt, LLC, of Greenville, for Respondent.

―――――――――――

**PER CURIAM:** Appellant Sharon S. McMillan (Wife) appeals the family court's order interpreting a divorce decree's provision for the equitable division of a retirement account and the resulting qualified domestic relations order (QDRO) the

family court signed. Wife argues the family court erred in issuing a QDRO more than ten years after the entry of the divorce decree. Wife also argues that even if issuing the QDRO was proper, the family court erred in its interpretation of the division of the retirement account. Finally, Wife argues the family court erred in excluding witness testimony. We affirm.

## FACTS

In an order dated July 1, 2010 (Divorce Decree), the family court granted Wife and Respondent David A. Miller (Husband) a divorce. In the same order, the family court ordered Wife's South Carolina Retirement account (PEBA Account) and Husband's American Funds account (401(k) Account) be "equally divided, dollar for dollar, between Husband and Wife." The court specified that any accounts requiring a QDRO be prepared by QDRO specialist and attorney Richard Rhodes. Rhodes drafted a QDRO for the 401(k) Account, and it was executed in October 2010. The QDRO for the PEBA Account was never drafted or executed.

Wife began drawing retirement benefits from her PEBA Account on August 1, 2020. When Husband failed to receive benefits from the PEBA Account, he learned a QDRO for the PEBA Account had never been executed. Husband contacted his attorney to draft a proposed QDRO for the PEBA Account (PEBA QDRO); Wife declined to sign the PEBA QDRO.

On October 1, 2020, Husband filed a rule to show cause, alleging Wife was in contempt for violating the terms of the Divorce Decree by failing to effectuate the division of the PEBA Account. Husband also asserted he was entitled to one-half of the marital portion of the monthly benefit Wife received. Wife sought to dismiss the action as barred by the statute of limitations and laches because Husband was seeking entry of the PEBA QDRO more than ten years after the entry of the Divorce Decree.[1]

At a hearing on the rule to show cause, the parties stipulated the family court should make a determination as to the interpretation of the Divorce Decree and

---

[1] It appears Wife filed a motion to dismiss and a return to the rule to show cause petition. However, the record did not include these documents, but the parties reference these documents in the hearing transcript, and the family court's order makes a ruling on at least some of the arguments raised in the motion to dismiss. We also note it appears portions of the rule to show cause hearing transcript are missing from the record.

should issue a QDRO resolving all issues pertaining to the division of the PEBA Account. Husband testified that at the time of the divorce action, he understood that he would receive one-half of the marital portion of the benefits Wife would receive from the PEBA Account. Rhodes's testimony essentially echoed Husband's understanding of how the parties intended to divide the PEBA Account. Husband also called an attorney in PEBA's legal department, Melissa Alexander; Alexander testified Wife would have been unable to do a partial withdrawal of funds from her PEBA Account. Wife called Ray Brandt as an expert witness in family financial accounting. His testimony primarily concerned Wife's financial planning and her PEBA Account.

The family court issued an order declining to hold Wife in contempt. The family court order determined the clear language of the Divorce Decree required an equal division of the marital portion of Wife's PEBA Account; however, the court also found the Divorce Decree was silent on whether the division of the PEBA Account would result in a lump sum amount or a monthly benefit. Based on Rhodes's and Husband's testimonies, the court found the parties intended to divide the PEBA Account such that Husband would receive the monthly benefit he would have received had Wife retired on the day she filed the divorce action. With regard to Wife's statute of limitations and laches arguments, the court found no evidence of any prejudice to Wife was presented. Specifically, no evidence had been offered to show that the amount received by Husband would be different had the PEBA QDRO been executed in 2010. Following the order, the court signed the PEBA QDRO.

The record does not contain a Rule 59(e), SCRCP, motion by Wife. This appeal followed the family court's order.

## ISSUES ON APPEAL

I.      Did the family court err in admitting into evidence and later signing a proposed QDRO more than ten years after the entry of the Divorce Decree?

II.     In the alternative, did the family court err in ordering Wife to pay Husband a portion of her monthly benefit instead of a lump sum as set forth in the plain language of the Divorce Decree?

III.    Did the family court err in excluding the testimony of Ray Brandt regarding the interpretation of the Divorce Decree's division of the PEBA Account as a lump sum and not a monthly benefit?

## STANDARD OF REVIEW

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). When reviewing the family court's evidentiary and procedural rulings, this court uses an abuse of discretion standard. *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018) (per curiam).

## LAW/ANALYSIS

### I.     Entry of the PEBA QDRO

Wife argues the family court erred in admitting the PEBA QDRO into evidence and in signing it when more than ten years had elapsed since the entry of the Divorce Decree. Wife cites to the statute of repose in section 15-39-30 of the South Carolina Code (2005) to support this proposition.[2] In the alternative, Wife asserts the doctrine of laches barred the family court from admitting and signing the proposed PEBA QDRO. We disagree.

With regard to Wife's argument that the family court improperly admitted the proposed PEBA QDRO into evidence, this issue is not preserved and is not properly before this court. At the hearing, Husband's counsel sought to introduce the proposed PEBA QDRO into evidence. The court specifically asked Wife if she had any objection to the admission. Wife's counsel stated: "No objection." *See State v. Jones*, 435 S.C. 138, 144, 866 S.E.2d 558, 561 (2021) ("In order for an issue to be preserved for appellate review, a party must make a 'contemporaneous objection that is ruled upon by the trial court.'" (quoting *State v. Sweet*, 374 S.C. 1, 5, 647 S.E.2d 202, 205 (2007))).

With regard to Wife's arguments related to the statute of repose and the statute of limitations, Wife failed to provide an adequate record on which this court could

---

[2] Section 15-39-30 provides:

> Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof, and this whether any return may or may not have been made during such period on such executions.

review these issues. The record on appeal does not include Wife's return to the petition for the rule to show cause or her motion to dismiss, and sections of the hearing transcript are missing. Even from the documents that are in the record, it is unclear what arguments Wife made to the family court about whether entry of the PEBA QDRO was time-barred. The record contains no references to the statute of repose. The record contains brief mentions of the statute of limitations but no substantive arguments by Wife explaining why the statute of limitations barred entry of the PEBA QDRO. Wife's counsel's only discussion of the statute of limitations was stating that an award of a sum of money pursuant to an equitable distribution is a money judgment. The hearing transcript in the record does not reflect that counsel offered any explanation as to why this is relevant to the statute of limitations.

With regard to Wife's arguments related to laches, this issue is not preserved for our review because the record does not include what arguments Wife raised to the family court. Husband's counsel attempted to refute a laches argument at the hearing, and the family court issued a ruling related to laches. However, the brief reference by Husband's counsel and the court's ruling does not provide this court with enough information to understand what Wife's argument was on any of the elements required to establish laches. *See Emery v. Smith*, 361 S.C. 207, 215, 603 S.E.2d 598, 602 (Ct. App. 2004) ("The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice."). Further, our preservation rules require *the appellant* to be the party to raise the issue to the circuit court. *See S.C. Dep't of Transp. v. First Carolina Corp of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (noting to preserve an issue for appellate review, the issue must be raised by the appellant to the trial court).

However, even if this court were to reach the merits of the laches argument, Wife failed to show any evidence of prejudice. *See Emery*, 361 S.C. at 215, 603 S.E.2d at 602 ("The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice."). Wife did not detrimentally change her position as a result of the delayed PEBA QDRO execution. *See id.* ("Under the doctrine of laches, if a party[] knowing his rights does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights."). We agree with the family court's finding that the delay in executing the PEBA QDRO did not impact the amount Husband was to receive.

For the reasons discussed above, we affirm the family court's order. *See Smith v. Phillips*, 318 S.C. 453, 455, 458 S.E.2d 427, 429 (1995) ("[A]n appellate court cannot address an issue unless it was raised to, and ruled upon by, the trial court.");

*Duckett by Duckett v. Payne*, 279 S.C. 94, 96, 302 S.E.2d 342, 343 (1983) ("[T]he appellant carries the burden of convincing this [c]ourt that the trial court erred."); *Weston v. Kim's Dollar Store*, 385 S.C. 520, 538, 684 S.E.2d 769, 779 (Ct. App. 2009) (declining to reach an argument because the appellant's motion seeking amendment or clarification of the circuit court's order granting partial summary judgment did not appear in the record; thus, the court was unable to discern whether the appellant raised to the circuit court the issues she was appealing), *remanded on other grounds*, 399 S.C. 303, 312, 731 S.E.2d 864, 868–69 (2012); *Swicegood v. Lott*, 379 S.C. 346, 356, 665 S.E.2d 211, 216 (Ct. App. 2008) (holding that although the appellant claimed to have made a motion and that it was denied by the circuit court, the record did not contain such a motion; therefore, the issue was not preserved for review); *cf. Taylor v. Medenica*, 324 S.C. 200, 216, 479 S.E.2d 35, 43 (1996) (noting an issue is not preserved if the party argues one ground at trial and an alternate ground on appeal).

## II.     Intent of the Divorce Decree

Wife asserts that if this court finds the admission and entry of the PEBA QDRO order were proper rulings, it should reverse the family court's finding that the plain language of the Divorce Decree required Wife to pay Husband a portion of her monthly benefit rather than a lump sum amount. Wife argues the appropriate construction of the Divorce Decree is that equitable division of the PEBA Account was a lump sum based on the valuation of the account at the time of the issuance of the Divorce Decree. We disagree.

In her brief, Wife conceded the Divorce Decree could interpreted multiple ways with regard to the manner of dividing the PEBA Account. Because of the ambiguity of the Divorce Decree, the court must determine the intent of the parties. *See Davis v. Davis*, 372 S.C. 64, 75, 641 S.E.2d 446, 451 (Ct. App. 2006) (holding construction of a separation agreement is a matter of contract law); *id.* at 75, 641 S.E.2d at 452 (noting if an agreement is "susceptible of more than one interpretation, it is ambiguous and the court should seek to determine the intent of the parties").

The only evidence in the record about the interpretation of the Divorce Decree comes from Rhodes's and Husband's testimonies about their understanding the parties intended for Husband to receive a monthly benefit. Further, Alexander testified PEBA would not permit a partial withdrawal from a retirement account, indicating the Divorce Decree unlikely contemplated equitable division of the account being a lump sum. Wife did not provide any testimony to support her understanding that the parties intended for Husband to receive a lump sum at the time of the Divorce Decree.

Because of the lack of evidence in the record supporting Wife's interpretation of the Divorce Decree, we affirm the family court's finding that the parties intended for Husband to receive the monthly benefit he would have received had Wife retired on the day she filed the divorce action. *See Simmons*, 392 S.C. at 414, 709 S.E.2d at 667 (noting in appeals from the family court, the appellate court reviews factual and legal issues de novo).

### III. Exclusion of Testimony

Wife argues the family court erred by excluding the testimony of Ray Brandt regarding his interpretation of the Divorce Decree's division of the PEBA Account as a lump sum and not a monthly benefit. Wife asserts that the outcome would have been different had the court permitted Brandt's testimony because, without it, the only evidence on how to interpret the Divorce Decree was Rhodes's testimony about the valuation date and its relevancy in drafting a QDRO. We disagree.

Wife points to a specific exchange at the hearing in which Wife's counsel asked Brandt what his findings were on the retirement accounts' division in the Divorce Decree. Before he could respond, Husband's counsel objected stating, "The [Divorce Decree] speaks for itself. As I understand, family court is the only forum to interpret this [Divorce Decree]. . . . I don't think [Brandt] has the qualifications or the authority to testify about what that [Divorce Decree] means." Wife's counsel reframed the question; Husband's counsel, again, objected on the same grounds. The family court stated its understanding of the question was whether Brandt had calculated the amount due by the terms of the Divorce Decree to be paid under a QDRO. Husband's counsel withdrew his objection. Wife's counsel then asked Brandt, "So what I'm not asking you to do is to interpret [the Divorce Decree]. From looking at [the Divorce Decree], did you make a determination as to how much money [Wife] would be paying to [Husband] under [the Divorce Decree]?"[3]

Wife's counsel did not contest the family court's ruling on Husband's objection to Brandt's testifying about the interpretation of the Divorce Decree. Accordingly, this issue was not preserved for review on appeal and is not properly before this court. *See TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d

---

[3] After this exchange, Husband's counsel objected several more times to questions from Wife's counsel seeking Brandt's interpretation of the Divorce Decree. The family court sustained the objection, and Wife's counsel offered no further argument against the objection.

471, 474 (1998) ("An issue conceded in a lower court may not be argued on appeal.").

## CONCLUSION

For the foregoing reasons, the family court's order is

**AFFIRMED.**[4]

**THOMAS, KONDUROS, and GEATHERS, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.